Alfonso **MARTINEZ**, Jr., Plaintiff,

v.

Kevin **MATHIS**, in his Individual Capacity, Defendant.

**Civil Action No. CV296–139.**

United States District Court, S.D. Georgia, Brunswick Division.

March 31, 1997.

John Edwin Morrison, Mt. Vernon, GA, George Brian Spears, Atlanta, GA, for Alfonso Martinez, Jr.

Terry Lee Readdick, G. Todd Carter, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for Kevin Mathis.

## ORDER

ALAIMO, District Judge.

Plaintiff, Alfonso Martinez, Jr. ("Martinez"), brings this action pursuant to 42 U.S.C. § 1983, against Defendant, Kevin Mathis ("Mathis"), in his individual capacity. Martinez alleges that he was physically assaulted while an inmate at the Jeff Davis County Jail (the "Jail") because Mathis, a jailer, encouraged two other inmates to beat him. Mathis has filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, which will be **GRANTED** for the reasons set forth below.

## FACTS

On October 31, 1994, Martinez was arrested on charges of child molestation and placed in the Jail. Martinez first was placed in a cell with inmate, Terry Andrews ("Andrews"). On November 1, 1994, Martinez and Andrews were moved into another cell, which they shared with inmate, Jason Smith ("Smith"). Martinez, Andrews, and Smith initially "had absolutely no problems" with one another. (Martinez Dep. at 27.)

On November 3, 1994, at approximately 5:30 A.M., Mathis went to the cell shared by Martinez, Andrews, and Smith, and Mathis allegedly asked Martinez if he was charged with molesting Martinez's daughter. (*Id.* at 15, 21.) Martinez answered affirmatively, to which Mathis allegedly responded that "I got a daughter out there and if you were around me I would have to kill you." (*Id.* at 15, 18, 21.) Andrews and Smith also were present in the cell, and they were awakened by the conversation between Mathis and Martinez. According to Martinez, Mathis then told Andrews that "If I was these good old boys around here I'd have to kick [Martinez's] ass," as he was exiting the cell. (*Id.* at 19, 21.)

Later that same morning, Martinez attended a bond hearing. During the time that Martinez was absent from the cell, Mathis allegedly returned to the cell and told Andrews and Smith that Martinez was "sick." (Smith Dep. at 10–11.) Mathis also allegedly told Andrews and Smith that somebody should "beat [Martinez's] ass." (*Id.* at 25–26.) According to Smith, after Mathis left the cell, run-arounds [1] came by the cell and told Smith and Andrews that Mathis would not take any action against Smith and Andrews if they "jumped" Martinez. (*Id.* at 26–27.)

After Martinez returned to the cell, he was physically assaulted by Andrews and Smith. (Def.'s S. of Undisputed Material Facts ¶ 4; Pl.'s Resp. to Def.'s Undisputed S. of Material Facts and Conclusions of Law ¶ 4.) Mathis was called to the cell, and he directed William "Bill" Adams, chief jailer, to call an ambulance for Martinez. Martinez was transported to a hospital where he received medical treatment for his injuries, which included bruises on his face, a wound between his eyes that required stitches, and sore ribs. An investigation of the incident was made, and Andrews and Smith were placed in "lockdown," in addition to losing all of their privileges.

Martinez, thereafter, filed the instant action against Mathis, alleging a deprivation of his rights under the Fourteenth Amendment, in violation of § 1983.

## DISCUSSION

### I. Summary Judgment

Mathis has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential ele-

---

**1.** Run-arounds are inmates who, *inter alia,* bring cigarettes to the inmates in their cells.

**1050**

ment to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

## II. `Section 1983

### A. Fourteenth Amendment Claim

■ Section 1983 provides judicial remedies to a plaintiff who shows (1) that the actions complained of were done by a person acting under color of state law, and (2) that the challenged actions deprived plaintiff of rights secured by the Constitution or federal law. *Duke v. Massey,* 87 F.3d 1226, 1231 (11th Cir.1996). There is no dispute that Mathis is a person who acted under color of state law. The relevant issue, thus, is whether Mathis' action deprived Martinez of his constitutional rights under the Fourteenth Amendment.

■ The Due Process Clause of the Fourteenth Amendment protects arrestees and pretrial detainees against mistreatment by prison officials.[2] *E.g., Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir.1996). Prison officials have a duty to protect in-

mates from violence at the hands of other inmates. *Farmer v. Brennan,* 511 U.S. 825, 831–33, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811, 822 (1995).

It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.... [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively "sufficiently serious"....

[Second,] a prison official must have a "sufficiently culpable state of mind." [T]hat state of mind is one of "deliberate indifference" to inmate health or safety....

*Id.* at 834, 114 S.Ct. at 1977, 128 L.Ed.2d at 823 (citations and footnote omitted).

■ In sum, prison officials violate an inmate's rights under the Fourteenth Amendment when they are deliberately indifferent to a substantial risk of harm to the inmate. *Id.* at 837–38, 114 S.Ct. at 1979, 128 L.Ed.2d at 825; *e.g., Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir.1995). To survive summary judgment on his § 1983 claim, therefore, Martinez must present sufficient evidence of (1) a substantial risk of harm, (2) Mathis' deliberate indifference to that risk, and (3) causation. *Hale,* 50 F.3d at 1582.

First, a genuine issue of material fact exists whether Martinez was exposed to a substantial risk of harm. Martinez presented evidence that Mathis made statements that allegedly encouraged Andrews and Smith to attack Martinez. Since the Court must construe the evidence in the light most favorable to Martinez, the Court assumes that Mathis made those statements. Evidence also was presented that Mathis is aware of other occurrences of inmate-on-inmate violence. (Mathis Dep. at 26–28, 31.) Martinez pres-

**2.** The Eight Amendment's Cruel and Unusual Punishment Clause applies to claims of mistreatment by convicted prisoners, while the Fourteenth Amendment's Due Process Clause applies to claims of mistreatment by arrestees and pretrial detainees. *Cottrell,* 85 F.3d at 1490. The applicable standard, however, is the same and, therefore, decisional law involving convicted prisoners applies equally to cases involving arrestees or pretrial detainees. *Id.* Accordingly, the Court may analyze Martinez's Fourteenth Amendment claim under the Eighth Amendment, as well.

For simplicity, the Court will use the term "inmate" to refer collectively to convicted prisoners, arrestees, and pretrial detainees.

ents sufficient evidence from which a jury could conclude that a substantial risk of harm existed at the Jail and, thus, he has met his burden on this element.

■ Second, a showing of deliberate indifference requires evidence that Mathis subjectively knew of the substantial risk of harm and that he recklessly disregarded such risk. *Farmer*, 511 U.S. at 837–38, 114 S.Ct. at 1979. Mathis argues that the "remarks allegedly made by Mathis fall short of demonstrating that Mathis had a subjective knowledge that Smith and Andrews would assault Martinez." (Br. in Supp. of Def.'s Mot. for Summ. J. at 10.) Mathis further argues that "[e]ven if one could infer that these statements could cause an attack, there is simply no evidence in the record to show that Mathis himself actually drew the inference." (*Id.* at 13.)

Mathis is correct that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" before liability can be imposed. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. The Court, however, disagrees with Mathis' conclusion that there is no evidence to show that he subjectively drew the inference that Martinez was exposed to a serious risk of harm. Ray Charles Denning ("Denning"), an inmate at the Jail at the time of the incident at issue, states that "Before Mr. Martinez was beaten [sic] up, I told Mr. Mathis that a bunch of people wanted to kick Martinez's butt." (Denning Aff. ¶ 3.) Denning also states that "[Mathis] said to me that Martinez is going to get his butt kicked, adding, 'wait and see.'" (*Id.* ¶ 4.) Martinez, thus, presents sufficient evidence to create a genuine issue of material fact whether Mathis subjectively knew of the substantial risk of harm to Martinez.

■ Mere knowledge of a substantial risk of harm, however, is insufficient to show deliberate indifference. *Hale* 50 F.3d at 1583. Martinez also must show that Mathis recklessly disregarded the risk of harm. It is apparent that Mathis took no steps to abate the risk of harm. Martinez, thus, has met his burden with respect to a showing of deliberate indifference.

Third, there must be evidence of causation between Mathis' deliberate indifference and Martinez's injury. Smith stated in his deposition that the statements allegedly made by Mathis "had a big part" in his participation in the assault on Martinez, and that Mathis "kept ... egging us on." (Smith Dep. at 29, 25.) Smith also stated that he did not know why Martinez was in jail until Mathis told Smith that Martinez "was in there for messing with a little girl. . . ." (*Id.* at 8.) Martinez presents sufficient evidence to create a genuine issue of material fact whether the statements allegedly made by Mathis caused Andrews and Smith to attack Martinez.

■ has satisfied his burden with respect to each of the three elements of a Fourteenth Amendment claim brought under § 1983. Although Martinez has cleared the first hurdle of establishing his § 1983 claim, he still must clear the second hurdle of the defense of qualified immunity to survive summary judgment.

## B. Qualified Immunity

■ The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); *see also Spivey v. Elliott*, 29 F.3d 1522, 1524 (11th Cir.1994). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738, 73 L.Ed.2d at 411. The "objective reasonableness" standard is used to determine whether the law was clearly established. *Stough v. Gallagher*, 967 F.2d 1523, 1525 (11th Cir. 1992).

■ In the Eleventh Circuit, the "objective reasonableness" standard is applied through a two-part analysis:

(1) The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

(2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional laws."

*Id.* at 1526 (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988)).

 First, Martinez asserts that Mathis is precluded from asserting that Mathis was acting within the scope of his discretionary authority because Mathis denies that he made the statements at issue. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 12.) The Court is not persuaded by Martinez's argument. Mathis does not deny that he communicated with Martinez, Andrews, and Smith, but, rather, denies that he made the specific statements of which Martinez complains. The term "discretionary authority" includes actions that are undertaken pursuant to the performance of an official's duties and are within the scope of the official's authority. *McCoy v. Webster,* 47 F.3d 404, 407 (1 1th Cir.1995). Mathis' conduct falls within that definition of "discretionary authority." Any communications that Mathis may have had with Martinez, Andrews, and Smith occurred while he was acting within his authority and pursuant to his duties as a jailer. Accordingly, the Court concludes that Mathis satisfies the first prong of the objective reasonableness test.

Second, Martinez must show that Mathis' alleged conduct violates a clearly established constitutional right. Martinez claims that the law is clearly established that urging or otherwise intentionally engaging in conduct that an official knows will result in inmate-on-inmate violence is unconstitutional. (Br. in Opp'n to Def.'s Mot. for Summ. J. at 11.) In response, Mathis claims that there is no case law on point that proscribes the conduct of which Martinez complains. (Br. in Supp. of Def.'s Mot. for Summ. J. at 15–16.)

 "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994). Qualified immunity cannot be denied with reference only to general rules and the violation of abstract rights. *Id.* at 1150. Rather, a denial of qualified immunity is proper only if pre-existing law with materially similar facts dictates that Mathis' conduct violates Martinez's rights. *Id.* at 1150.

 The law is clearly established that prison officials have a duty to provide reasonable protection to inmates whose health and safety are threatened. *E.g., McCoy v. Webster,* 47 F.3d 404, 407 (1 1th Cir.1995). In light of the above principles, however, the Court cannot rely on that general proposition and deny Mathis qualified immunity. Martinez fails to point to a case in which conduct similar to that of Mathis is proscribed,[3] and the Court agrees with Mathis that no such law exists. The law, therefore, is not clearly established that prison officials violate constitutional laws when they make statements in the presence of inmates that a particular inmate is "sick" and "should have his ass beat."[4] Accordingly, Mathis is entitled to qualified immunity on the § 1983 claim.

---

**3.** Martinez cites to *Glover v. Alabama Dep't of Corrections,* 734 F.2d 691 (11th Cir.1984), *cert. granted and j. vacated,* 474 U.S. 806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), in support of his argument that Mathis should be denied qualified immunity. Martinez maintains that the facts of *Glover* are sufficiently similar to the instant case and, therefore, the law is clearly established that Mathis' conduct violates constitutional laws. (Br. in Opp'n to Def.'s Mot. for Summ. J. at 11.)

Martinez's reliance on *Glover* obviously is misplaced, however, because that opinion was vacated.

**4.** If, in fact, Mathis did make those statements, the Court certainly does not condone such conduct, and believes that engaging in such conduct is an exercise of extremely poor judgment.

## CONCLUSION

The Court carefully has considered the arguments raised by both parties. Defendant's Motion for Summary Judgment is **GRANTED**. The Court declines to exercise pendent jurisdiction over Mathis' state law claims brought under the Georgia Constitution. The Clerk is hereby **ORDERED** to enter the appropriate judgment.